## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| VINCENT AGUILAR, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BLU PRODUCTS, INC. and ADUPS USA LLC,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Vincent Aguilar ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his undersigned counsel, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, based upon the investigation made by and through his attorneys, as follows:

## SUMMARY OF ACTION

1.  This is a privacy case brought on behalf of owners of cellular phones, designed, manufactured, marketed, and sold by Blu Products, Inc. ("Blu"), which contained firmware installed by defendant Adups USA LLC ("Adups USA") and its Chinese parent company, Shanghai Adups Technology Co., Ltd. (together, Blu and Adups USA are referred to herein as "Defendants").

2.  At all relevant times, as defined by the statute of limitations for each claim alleged herein, the Adups firmware installed on Blu phones continuously captured and transmitted to a server in China the cell phone owners' text messages, personal contacts, call logs, physical location, and other confidential data.

3.  Among other things, the Adups firmware surreptitiously intercepted and transmitted a tremendous amount of personally identifiable information ("PII"), including users'

text messages, call logs, and details of how consumers' mobile devices were being used. Depending upon the type of information being siphoned from the phones, data would be transmitted to an Adups server in Shanghai either every 24 hours or every 72 hours.

4.      The firmware was associated with a "Wireless Update" application, which is intended to be used to update the operating system on mobile devices.  In addition to collecting users' personal information, the firmware also collected and transmitted information about the use of applications installed on consumers' phones, and executed remote commands with escalated system privileges.  The firmware was also able to remotely reprogram the mobile devices and install applications on consumers' phones without their knowledge or consent, thereby creating serious security vulnerabilities.

5.      Given that people routinely use their mobile devices to purchase goods via credit card, and many people use applications for particularly sensitive tasks, such as banking and ordering of prescription drugs, the ability of the Adups firmware to collect data from applications installed consumers' phones represents a particularly egregious invasion of their privacy.

6.      Not only did the Adups firmware unlawfully intercept and transmit users' personal data, but also it interfered with the battery life of the phones and diminished the overall user experience.  The constant harvesting of data and transmission of personal information to Adups' servers in  Shanghai congested users' cellular data networks and depleted the phones' battery life, thus leaving users with phones that performed significantly less efficiently and effectively than they otherwise would have.

7.      According to Blu, the firmware was installed on the following models of Blu smartphones containing Wireless Update versions 5.0.x through 5.3.x:  (1) the R1 HD; (2) the

Energy X Plus 2; (3) the Studio Touch; (4) the Advance 4.0 L2; (5) the Neo XL; and (6) the Energy Diamond (the "Affected Phones").[1]

8.      While Blu has admitted that the six models listed above were affected by the security issues described herein, and assured customers that the affected application has been self-updated such that the firmware is no longer collecting or sending users' private information, approximately 120,000 phones have been affected.

9.      Plaintiff and the other members of the Class (as defined herein) suffered damages as a result of their purchases of Affected Phones because, *inter alia*: (1) their private data was exposed and transferred to third parties without their knowledge or consent; (2) the cellular data services they purchased were unlawfully, and without authorization, utilized by Defendants; and (3) their Affected Phones did not perform as efficiently or effectively as they would have had the firmware never been installed thereon.

10.      Moreover, owners of the Affected Phones were denied the value of what was marketed to them – mobile phones that operated in accordance with their hardware and software specifications, which were fit for ordinary use.  Had Plaintiff and the other members of the Class known of the true facts regarding the Affected Phones, they would have paid less for their Affected Phones or would not have purchased them at all.

<u>**THE PARTIES**</u>

11.      Plaintiff is a citizen of California who resides in Hayward, California in the county of Alameda.  Plaintiff purchased two R1 HD phones from Amazon.com, Inc. ("Amazon") in September and October 2016, for approximately $60 each.  Plaintiff was first informed of the

---

[1] *See Security Concern*, Blu Products, http://www.bluproducts.com/security/ (last visited Dec. 9, 2016).

data breach in November 2016, when he received relevant notices from Amazon and viewed news coverage of the breach.

12.     Defendant Blu is a Delaware corporation, headquartered in Miami, Florida, which purports to design and manufacture affordable, attractive, and innovative mobile devices to suit a wide variety of consumer needs.

13.     Defendant Adups USA is a Delaware corporation and the United States subsidiary of Shanghai Adups Technology Co., Ltd. ("Shanghai Adups"), a Chinese entity based in Shanghai, which provides professional Firmware Over-The-Air ("FOTA") update services and creates code that runs on hundreds of millions of phones, cars, and other smart devices worldwide, including the Affected Phones.  Together, Adups USA and Shanghai Adups may be referred to as "Adups."

## JURISDICTION AND VENUE

14.     This Court has diversity jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and some members of the Classes (as defined below) are citizens of a different state than Defendants.

15.     Additionally, pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims for violations of the Wiretap Act (18 U.S.C. § 2511), the Electronic Communications Privacy Act (18 U.S.C. § 2512), and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, et seq.).  This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because Blu's principal place of business is in this District and a substantial part of the events or omissions that give rise to Plaintiff's claims occurred in this District.

## SUBSTANTIVE ALLEGATIONS

**Background of Defendants**

17.     Since it was founded in 2009, Blu, which touts itself as one of the fastest growing mobile phone manufacturers in the world, has purportedly sold more than 35 million mobile devices in over 40 countries.

18.     Among other things, Blu designs, manufactures, and sells pre-paid, no-contract, unlocked mobile phones that operate on the Google Android operating system.

19.     In addition to marketing and selling its products directly to consumers, Blu products, including the Affected Phones, are also sold through major U.S. retailers like Amazon and Best Buy Co. Inc. ("Best Buy").

20.     The cellular telephones sold by Blu are relatively inexpensive, in part because the cost of the phones is subsidized by companies that pay to advertise to Blu customers, including through advertisements displayed on Blu phones.  Moreover, because the phones are "unlocked" they can be used on any cellular carrier's network, as long as the network is compatible with the phone's wireless technology.

21.     Blu incorporates Adups firmware – which creates or enhances the ability to control, monitor, and/or manipulate data on a device or system – into several models of Blu phones, including the Affected Phones, sold in the United States.

22.     Adups provides the code that lets companies remotely update their firmware and, as such, tell phones how to operate.

**The Data Breach & Resulting Damage to Consumers**

23.     Typically, when a phone manufacturer updates its firmware, it tells customers what it is doing and whether it will use any personal information.  Here, however, owners of the Affected Phones were never notified that their private information was being disclosed to third parties.

24.     Instead, the Adups firmware installed on the Affected Phones collected sensitive PII and communications from users' mobile phones and transmitted such data and communications to an Adups server in Shanghai – all without the knowledge or consent of the users.

25.     The user and device information collected by the firmware included, *inter alia*, the full content of text messages, contact lists, call histories with complete telephone numbers, and unique device identifiers.  The Adups firmware could also provide detailed information about users' physical locations, and details of how consumers' Affected Phones – including the applications installed thereon – were being used.  In addition to some relatively innocuous data that was surely culled from users' applications, depending upon the types of applications installed on users' Affected Phones, the Adups firmware could have collected especially sensitive information including, but not limited to, medical, bank account, and credit card data.

26.     Every 72 hours, text messages and call log information were transmitted to a server located in Shanghai.  For other personal information collected, transmission occurred every 24 hours.

27.     In addition to violating users' privacy, the firmware improperly misappropriated a portion of the data package that consumers purchased from cellular providers.  This interference would not only usurp a portion of the monthly data usage allotment that an owner of an Affected

Phone had purchased (thus making it more likely that the user's cellular carrier would impose data overage charges), but also the firmware's use of the Affected Phone's resources would reduce the speed at which the Affected Phone could perform other tasks, as the phone would not be receiving the full benefit of its data package.

28.     Additionally, due to the nearly constant collection and transmission of PII, the Affected Phones' batteries were depleted more quickly than they would have been had the firmware not been surreptitiously collecting and transmitting data to China.

29.     According to Adups, the firmware was intentionally designed to help a Chinese phone manufacturer monitor user behavior.  In fact, as Blu knew or should have known, Adups markets itself as a means through which its business partners can obtain "big data analytics" by, for example, harvesting user information.  Nevertheless, Adups contends that the version of the software installed on the Affected Phones was not intended for American phones.

30.     The operation of this Adups firmware bypassed the detection of mobile antivirus security programs, which assumed that the Adups firmware was not malware because it was contained within the Affected Phones at all times after they were shipped to purchasers.  As such, Plaintiff and the other members of the Classes (as defined herein) were not notified by any mobile antivirus security program of the presence of the malicious program on their Affected Phones, nor were they otherwise able to detect the existence of the firmware.

**The Data Breach Finally Becomes Public**

31.     On November 15, 2016, Kryptowire, a United States security firm, reported that Adups firmware on the Affected Phones was surreptitiously intercepting and transmitting PII.

32.     Prior to that date, neither Blu nor Adups ever disclosed the existence of the Adups firmware or the fact that Affected Phone owners' PII would be (and was being) intercepted, recorded, and transmitted abroad.

33.     Plaintiff, for example, saw news coverage regarding the data breach around this time, in addition to receiving notices from Amazon about the breach.

34.     Although Blu has now admitted that approximately 120,000 Affected Phones contain the malicious Adups firmware, prior to November 15, Blu and Adups concealed from Affected Phone owners the existence and operation of the firmware that intercepted, recorded, and transmitted the owners' PII.

35.     Given the predictably negative reaction to the breach, Blu has released a firmware update that purportedly removes from users' Affected Phones the software components that enabled the unlawful collection and transmission of PII.

36.     Users of Blu phones could neither reasonably detect the existence – or the data collection and transmission functions – of Adups firmware, nor reasonably delete or disable the firmware prior to Blu's recent release of an alleged remedy to the problem.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of himself and on behalf of the following Classes (which are sometimes collectively referred to as the "Class" or "Classes"):

**Nationwide Class**

All persons in the United States who, at any time before November 15, 2016, purchased or owned any of the Affected Phones.

**California Subclass**

All persons in the State of California who, at any time before November 15, 2016, purchased or owned any of the Affected Phones.

38.     Excluded from the Classes are employees or agents of Defendants and their subsidiaries and affiliates, all persons who make a timely request to be excluded from the Classes, and the judge to whom the case is assigned, as well as his or her immediate family.  The claims do not include personal injury claims.

39.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis, using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

40.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

41.     The members of the Classes are so numerous and geographically dispersed that individual joinder of all members of the Classes is impracticable.  While Plaintiff is informed and believes that there are not less than tens of thousands of members of the Classes, the precise number of Class members is unknown to Plaintiff at this time, but may be ascertained from Defendants' records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

42.     This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

(a) Whether Adups firmware installed on the Affected Phones surreptitiously intercepted Class members' PII;

(b) Whether Adups firmware installed on the Affected Phones surreptitiously transmitted Class members' PII to an unauthorized party or parties;

(c) Whether Defendants intentionally interfered with Class members' ownership, possession, and/or use of their Affected Phones by causing sensitive PII to be extracted from the Affected Phones and transmitted overseas without Class members' knowledge or consent;

(d) Whether Defendants' conduct, as described herein, violated the Wiretap Act, the Electronic Communications Privacy Act, and/or the Magnuson-Moss Warranty Act;

(e) Whether Defendants' conduct, as described herein, violated the California Unfair Competition Law; and

(f) Whether Plaintiff and the other members of the Classes are entitled to injunctive and/or declaratory relief.

43.     Plaintiff's claims are typical of the claims of other Class members because, among other things, all Class members were comparably injured through the wrongful conduct of Defendants, as described above.

44.     Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Classes he seeks to represent.  Furthermore, Plaintiff has retained counsel competent and experienced in complex class action litigation.  The Classes' interests will be fairly and adequately protected by Plaintiff, who intends to prosecute this action vigorously, and by Plaintiff's skilled and experienced counsel.

45.     Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive and declaratory relief, as described below, with respect to the Classes as a whole.

46.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages or other financial detriment suffered by Plaintiff and the other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Classes to individually seek redress for Defendants' wrongful conduct.

47.     Even if Class members could afford individual litigation, the court system could not.  Individual litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and to the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

48.     **<u>Discovery Rule Tolling</u>:**  Even through the exercise of reasonable diligence, Plaintiff and other members of the Classes could not have reasonably discovered, and could not have known of facts that would have caused a reasonable person to suspect (within any applicable statute of limitations), that the Affected Phones were collecting their private information and periodically transmitting that information abroad.  In fact, it was only based upon both code and network analysis of the firmware, performed by a security firm, that the serious problems with the Affected Phones were discovered.  Even a reasonable and diligent investigation by Plaintiff or other members of the Classes could not have revealed that

11

Defendants had information in their sole possession about the existence of firmware on the Affected Phones that improperly monitored and reported on consumer behavior, which was discovered by Plaintiff only very shortly before this action was filed.

## CLAIMS FOR RELIEF

**I.** **On Behalf of the Nationwide Class**

### COUNT I
### Violation of the Wiretap Act, 18 U.S.C. § 2511

49.     Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

50.     Plaintiff brings this claim against all Defendants on behalf of himself and the other members of the Nationwide Class.

51.     Defendants, by means of their design, authorship, programming, installation, activation, and other involvement with the Adups firmware on the Affected Phones intercepted, endeavored to intercept, and/or procured others to intercept or endeavor to intercept electronic communications in violation of 18 U.S.C. § 2511(1).

52.     Defendants' interceptions of Plaintiff's and Class members' electronic communications harmed Plaintiff and the other Class members by, *inter alia*, interfering with their trust and repose in the privacy and security of their personal and confidential communications.

53.     Pursuant to 18 U.S.C. § 2520, Plaintiff and the other members of the Nationwide Class are entitled to appropriate relief, including damages, equitable or declaratory relief, and reasonable attorneys' fees.

### COUNT II
### Violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2512

54.     Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

55.    Plaintiff brings this claim against all Defendants on behalf of himself and the other members of the Nationwide Class.

56.    Defendants intentionally possessed, manufactured, sold, and/or assembled an electronic device knowing, or having reason to know, that the design of the device renders it primarily useful for the purpose of the surreptitious interception of electronic communications and that such device or any component thereof has been or will be transported in interstate or foreign commerce.  The Adups firmware pre-installed on Affected Phones was sent through the mail and/or transported in interstate or foreign commerce.

57.    Such Adups firmware constitutes an electronic device designed to be primarily useful for the purpose of surreptitious interception of electronic communications.   Adups firmware surreptitiously intercepted text messages sent electronically via Plaintiff's and Class members' cell phones.

58.    By means of Defendants' conduct alleged herein, electronic communications of Plaintiff and Class members were surreptitiously intercepted in violation of 18 U.S.C. § 2512.

59.    Defendants' surreptitious interceptions of Plaintiff's and Class members' electronic communications harmed Plaintiff and Class members, including by interfering with their trust and repose in the privacy and security of their personal and confidential communications.

60.    Pursuant to 18 U.S.C. § 2520, Plaintiff and the other members of the Nationwide Class are entitled to appropriate relief, including damages, equitable or declaratory relief, and reasonable attorneys' fees.

### COUNT III
### Violation of the Magnuson-Moss Warranty Act

61.    Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

62.     Plaintiff brings this claim against all Defendants on behalf of himself and the other members of the Nationwide Class.

63.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 2301(3).

64.     The Affected Phones are a "consumer product," as that term is defined in 15 U.S.C. § 2301(1).

65.     Plaintiff and the other members of the Nationwide Class are "consumers," as that term is defined in 15 U.S.C. § 2301(3).

66.     Defendants are "warrantors" and "suppliers," as those terms are defined in 15 U.S.C. §§ 2301(4) and (5), respectively.

67.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

68.     Defendants provided Plaintiff and the other members of the Nationwide Class with "implied warranties," as that term is defined in 15 U.S.C. § 2301(7).

69.     Defendants have breached these implied warranties, as described in more detail above.   Without limitation, the Affected Phones are defective, as described herein, which resulted in the problems and failures also described herein.

70.     By Defendants' conduct as described in this Complaint, including Defendants' knowledge or constructive knowledge of the defects inherent in the Affected Phones, and their action and inaction in the face of this knowledge, Defendants have failed to comply with their obligations under their written and implied promises, warranties, and representations.

71.     In their capacity as warrantors, and by the conduct described herein, any attempts by Defendants to limit the implied warranties in a manner that would exclude coverage of the

defective firmware and systems is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective firmware and supporting systems is null and void.

72.    All jurisdictional prerequisites have been satisfied.

73.    Plaintiff and the other members of the Nationwide Class are in privity with Defendants in that they purchased the Affected Phones, on which Adups firmware was installed, from Blu or its agents.

74.    As a result of Defendants' breach of implied warranties, Plaintiff and the other members of the Nationwide Class are entitled to revoke their acceptance of the Affected Phones, obtain damages and equitable reliefs, and obtain costs pursuant to 15 U.S.C. § 2310.

## COUNT IV
### Breach of the Covenant of Good Faith & Fair Dealing

75.    Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

76.    Plaintiff brings this claim against all Defendants, as an alternative to the cause of action for unjust enrichment, on behalf of himself and the other members of the Nationwide Class.

77.    Each and every sale of an Affected Phone constitutes a contract between Defendants and the purchaser of that phone.  By installing the Adups firmware on users' Affected Phones and/or advertising and selling the Affected Phones, Defendants acted in a manner that, although not expressly forbidden by any contractual provision, acted to deprive Plaintiff and the other Nationwide Class members of the right to receive the benefits of their contracts with Defendants, and they were damaged thereby.

## COUNT V
### Unjust Enrichment

78.    Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

79.     Plaintiff brings this claim, as an alternative to the claim for breach of the implied covenant of good faith and fair dealing, against all Defendants on behalf of himself and the other members of the Nationwide Class.

80.     Plaintiff and the other members of the Nationwide Class conferred a benefit on Defendants by, *inter alia*, using (and paying for) their Affected Phones.

81.     Defendants have retained this benefit, and know of and appreciate this benefit.

82.     Defendants were and continue to be unjustly enriched at the expense of Plaintiff and the other members of the Nationwide Class.

83.     Defendants should be required to disgorge this unjust enrichment.

## COUNT VI
### Invasion of Privacy

84.     Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

85.     Defendants installed, or caused to install, Adups firmware on the Affected Phones.

86.     Defendants knew or should have known that such Adups firmware would, and did, collect and transmit Plaintiff's and Class members' confidential text messages and other PII without their knowledge or consent.

87.     By installing, or causing to install, Adups firmware on the Affected Phones, or failing to adequately test the software installed on the Affected Phones, Defendants unlawfully intruded upon the seclusion of Plaintiff and the other members of the Nationwide Class, and interfered with their trust and repose in the security of their private facts and communications.

88.     A reasonable person would find it highly offensive that Defendants collected Plaintiff's and Class members' PII and transmitted such information to unauthorized parties without the knowledge or consent of Plaintiff or other members of the Nationwide Class.

16

89.     Plaintiff's and the Class members' reasonable interest in privacy was vitiated as a direct and proximate result of Defendants' invasions as set forth above, and Plaintiff and the other members of the Nationwide Class are entitled to damages in an amount to be determined at trial.

## COUNT VII
### Trespass to Chattels

90.     Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

91.     Plaintiff and the other members of the Nationwide Class owned, possessed, and had a right to possess their Affected Phones.

92.     Defendants interfered with Plaintiff's and Class members' ownership, possession, and/or use of their Affected Phones by causing sensitive personal information to be extracted from the Affected Phones and sent to servers in Shanghai without their knowledge or consent.

93.     Defendants' interference with Plaintiff's and Class members' ownership, possession, and/or use of their Affected Phones caused damage to Plaintiff and the other members of the Nationwide Class, including by diminishing the Affected Phones' value and impairing their performance.

94.     A reasonable person would be willing to pay substantially less for a cell phone upon knowing that it contained irremovable firmware that would collect and transmit PII to an unauthorized party or parties.

95.     Plaintiff and the other members of the Nationwide Class are entitled to recover the full amount by which the Adups firmware harmed their possessory interest in, and reduced the value of, the Affected Phones.

## COUNT VIII
### Negligence

96.     Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

97.     Plaintiff brings this claim against all Defendants on behalf of himself and the other members of the Nationwide Class.

98.     Defendants owed a duty to Plaintiff and the other members of the Nationwide Class to use and exercise reasonable care in obtaining, retaining, securing, and deleting the PII of owners of Affected Phones.

99.     Defendants owed a duty to Plaintiff and the other members of the Nationwide Class to provide security, consistent with industry standards and requirements, to ensure that the phones they sold, and the software installed thereon, adequately protected the personal information of owners of the Affected Phones.

100.    Moreover, Defendants owed a duty of care to Plaintiff and the other members of the Nationwide Class because they were foreseeable and probable victims of any inadequate security and/or privacy practices.  Adups purportedly designed the firmware to collect and transmit PII so that a Chinese phone manufacturer with which it worked could monitor user behavior, and knew that this version of the firmware could not properly be installed on phones that would be sold in the United States.  Defendants know that users of mobile phones transmit all manner of private information by means of their mobile phones, and they were therefore charged with a duty to adequately protect this critically sensitive information.

101.    Defendants breached the duties they owed to Plaintiff and the other members of the Nationwide Class by failing to properly secure the PII transmitted using their Affected Phones.

102.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff and the other members of the Nationwide Class have suffered injury and are entitled to damages in an amount to be proven at trial.

**II.    On Behalf of the California Subclass**

**COUNT IX**
Violation of the California Unfair Competition Law
(Cal. Bus. & Prof. Code § 17200, *et seq*.)

103.    Plaintiff repeats and realleges paragraphs 1 to 48 as though fully set forth herein.

104.    Plaintiff brings this claim against both Defendants on behalf of himself and the other members of the California Subclass.

105.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practices."   Defendants have engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the California Unfair Competition Law (the "UCL").

106.    Defendants' conduct, as described herein, violated the UCL in at least the following ways:

107.    Defendants' misrepresentations and omissions alleged herein caused Plaintiff and the other members of the California Subclass to purchase their Affected Phones.  Absent those misrepresentations and omissions, Plaintiff and the other California Subclass members would not have purchased their Affected Phones, would not have purchased their Affected Phones at the prices they paid, and/or would have purchased less expensive alternative mobile phones that did not contain firmware that surreptitiously collected and transmitted their personal communications to a third party abroad.

108.    Accordingly, Plaintiff and the other California Subclass members have suffered injury in fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

109.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants under Cal. Bus. & Prof. Code § 17200.

110.    Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other members of the California Subclass any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345; and for such other relief as set forth below.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

A.    Determining that this action may be properly maintained as a class action and certifying Plaintiff as the Class representative pursuant to Federal Rule of Civil Procedure 23;

B.    Permanently enjoining Defendants from continuing to engage in the unlawful acts and practices as alleged herein by addressing the defects in the Product and/or adequately disclosing the risks posed by use of the Product as intended;

C.    Awarding Plaintiff and the Classes actual and other damages as applicable to each Count in an amount to be determined at trial;

D.    Awarding Plaintiff and the other members of the Classes the costs and expenses of this litigation, including reasonable attorneys' fees, experts' fees, and other costs and disbursements; and

E.      Awarding Plaintiff and the other members of the Classes such other and further relief as may be just and proper under the circumstances.

### JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: December 9, 2016

**THE WILNER FIRM**

/s/ *Richard J. Lantinberg*
Norwood S. Wilner
Richard J. Lantinberg
444 East Duval St., 2nd Floor
Jacksonville, FL 32202
Tel.:  (904) 446-9817
Fax:  (904) 446-9825
nwilner@wilnerfirm.com
rlantinberg@wilnerfirm.com

**LEVI & KORSINSKY LLP**
Lori G. Feldman
Courtney E. Maccarone
30 Broad Street, 24th Floor
New York, New York 10004
Tel.: (212) 363-7500
Fax: (212) 363-7171
lfeldman@zlk.com
cmaccarone@zlk.com

**WOLF HALDENSTEIN ADLER**
**   FREEMAN & HERZ LLP**
Janine L. Pollack
Correy A. Kamin
270 Madison Avenue
New York, NY 10016
Tel.:  (212) 545-4600
Fax:  (212) 686-0114
pollack@whafh.com
kamin@whafh.com

*Attorneys for Plaintiff*

/790479